**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF                                                          101 WEST LOMBARD STREET
J. Mark Coulson                                                     BALTIMORE, MARYLAND 21201
UNITED STATES MAGISTRATE JUDGE                          P:(410) 962-4953 — F:(410) 962-2985

July 17, 2026

LETTER MEMORANDUM OPINION AND ORDER TO ALL COUNSEL OF RECORD

RE:    *Stephanie Ward o/b/o Chad W. v. Frank Bisignano, Social Security Administration*
       Civil No. 1:25-cv-02692-JMC

Dear Counsel:

Chad Ward ("Plaintiff")'s surviving spouse, Stephanie Ward, petitioned this Court on August 14, 2025, to review the Social Security Administration's ("SSA" or "Defendant") final decision denying his claims for disability insurance benefits ("DIB"). (ECF No. 1). The Court has considered the record in this case as well as the parties' dispositive filings. (ECF Nos. 16, 20, 23). No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2025). The Court must uphold an agency decision if the decision is supported by substantial evidence and was reached through application of the proper legal standard. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will remand ALJ's and Appeals Council's determinations for the reasons explained below.

## I.    Procedural Background

Plaintiff filed his Title II application for DIB on June 23, 2019, alleging disability as of August 8, 2016. (Tr. 17, 211-212, 238-246).[1] Plaintiff's claim was denied initially on November 16, 2023, and again upon reconsideration on January 19, 2024. *Id.* at 17, 86-95. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") on March 20, 2024. *Id.* at 17. ALJ Anthony J. Johnson conducted a telephone hearing on March 19, 2025, but prior to that hearing, Mr. Ward unexpectedly passed away on February 14, 2025. *Id.* Mrs. Ward substituted as claimant on Plaintiff's behalf of February 17, 2025. *Id.* ALJ Johnson subsequently determined that Plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame on April 17, 2025. *Id.* The Appeals Council affirmed ALJ Johnson's decision on June 24, 2025. *Id.* at 1-8.

## II.    The ALJ's Decision

---

[1] When the Court cites to "Tr.," it is citing to the official transcript (ECF No. 12) filed in this case. When citing to specific page numbers within the official transcript, the Court is referring to the page numbers provided in the lower right corner of the official transcript pages.

1

In arriving at the decision to deny Plaintiff's claims, the ALJ (and subsequently the Appeals Council) followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920. "To summarize, the ALJ asks at step one whether the claimant has been working; at step two, whether the claimant's medical impairments meet the regulations' severity and duration requirements; at step three, whether the medical impairments meet or equal an impairment listed in the regulations; at step four, whether the claimant can perform her past work given the limitations caused by her medical impairments; and at step five, whether the claimant can perform other work." *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015). If the first three steps do not yield a conclusive determination, the ALJ must then assess the claimant's RFC, "which is 'the most' the claimant 'can still do despite' physical and mental limitations that affect her ability to work[,]" by considering all of the claimant's medically determinable impairments regardless of severity. *Id.* at 635 (quoting 20 C.F.R. § 416.945(a)(1)). The claimant bears the burden of proof through the first four steps of the sequential evaluation. If the claimant makes the requisite showing, the burden shifts to the SSA at step five to prove "that the claimant can perform other work that exists in significant numbers in the national economy, considering the claimant's residual functional capacity, age, education, and work experience." *Lewis v. Berryhill*, 858 F.3d 858, 862 (4th Cir. 2017) (internal citations omitted).

At step one in this case, the ALJ and Appeals Council found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date of August 8, 2016 through his date last insured of June 30, 2021. (Tr. 19). At step two, the ALJ and Appeals Council determined that Plaintiff suffered from the following severe impairments: "diabetes mellitus, peripheral neuropathy, hepatitis C, obesity, and fractured tibia." *Id.*

At step three, the ALJ and Appeals Council determined that Plaintiff's impairments or combination of impairments do not meet or equal one of the listed impairments in the regulations. *Id.* at 20; 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). In assessing Plaintiff's step-three impairments, the ALJ reasoned:

As there is no listing specific to claimant's diabetes mellitus, the undersigned has evaluated the severity of this impairment under the listings of relevant body systems, in accordance with SSR 14-2p. The claimant's diabetes mellitus has not resulted in amputation of an extremity, under the musculoskeletal system listings (1.00), listing-level diabetic retinopathy, under the special senses and speech listings (2.00), listing-level hypertension, cardiac arrhythmias, and heart failure, under the cardiovascular system listings (4.00), listing-level gastroparesis and ischemic bowel disease (intestinal necrosis), under the digestive system listings (5.00), listing-level diabetic nephropathy, under the genitourinary impairments listings (6.00), listing-level slow-healing bacterial and fungal infections, under the skin disorders listings (8.00), listing-level diabetic neuropathy, under the neurological listings (11.00), or listing-level cognitive impairments, depression, anxiety, and eating disorders, under the mental disorders listings (12.00).

In addition, the claimant's neuropathy does not result in disorganization of motor function in two extremities (see 11.00D1), resulting in an extreme limitation (see 11.00D2) in the ability to stand up from a seated position, balance while standing or walking, or use the upper extremities, nor does it result in marked limitation (see

11.00G2) in physical functioning (see 11.00G3a), so as to meet section 11.14.

(Tr. 21). Finding that Plaintiff had not proved that one or more of the above-mentioned severe impairments met or equaled one of the listed impairments in the SSA regulations, the ALJ determined Plaintiff's RFC as follows:

> [T]he claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and he was able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand and/or walk six hours in an eight hour workday and sit six or more hours in an eight-hour workday. He was able to occasionally climb ramps and stairs, but never able to climb ladders, ropes and scaffolds. He was able to occasionally balance, occasionally stoop, occasionally kneel, occasionally crouch and occasionally crawl. He was unable to tolerate exposure to concentrated vibration. He was unable to tolerate exposure to concentrated hazards such as unprotected heights or moving machinery. He was able to understand, remember and carry out simple work related instructions, and concentrate for periods of two hours on work related tasks. He was able to frequently but not constantly handle, finger and feel.

*Id.* at 22.  The ALJ further concluded that Plaintiff was unable to perform any past relevant work. *Id.*  Finally, given Plaintiff's RFC, age, education, and work experience, the ALJ determined that Plaintiff could perform the following jobs which existed in significant numbers in the national economy: (1) Cleaner, DOT 323.687-014, light, SVP 2, with approximately 190,000 jobs in the national economy; (2) Marker, DOT 209.587-034, light, SVP 2, with approximately 165,000 jobs in the national economy; and (3) Cashier, DOT 211.462-010, light, SVP 2, with approximately 200,000 jobs in the national economy. *Id.* at 26.  Accordingly, the ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act from August 8, 2016, the alleged onset date, through June 30, 2021, the date last insured. *Id.* at 27.

### III.    Legal Standard

The Court reviews an ALJ's decision to ensure that the ALJ's findings are supported by substantial evidence and were reached through an application of correct legal standards. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, . . . [which] consists of more than a mere scintilla of evidence but may be less than a preponderance." *Id.* (other citation and internal quotations omitted).  In accordance with this standard, the Court does not "undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005).  Instead, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Id.*

### IV.    Analysis

Plaintiff argues on appeal that the ALJ's decision was not supported by substantial evidence.  Specifically, Plaintiff faults the ALJ's and Appeals Council's RFC determination on several grounds: (1) the ALJ erred in his evaluation of Plaintiff's medical impairments; (2) the

ALJ erred in his RFC assessment; (3) the ALJ erred in his assessment of Plaintiff's credibility; (4) the ALJ erred in his assessment of Plaintiff's exertional and non-exertional limitations; (5) the ALJ erred in his evaluation of Vocational Expert opinion evidence. (ECF No. 16 at 1). It will be necessary only to address the first argument. For the reasons that follow, the ALJ's and Appeals Council's RFC determination is unsupported by substantial evidence. As such, I will remand the case.

> a. The ALJ's and Appeals Council's RFC Determination is Not Supported by Substantial Evidence

"An RFC is an assessment that represents the most a claimant can still do despite any physical and mental limitations on a 'regular and continuing basis.'" *Rodney M. v. Kijakazi*, No. CV 23-0947-CDA, 2024 WL 1097192, at *3 (D. Md. Mar. 13, 2024) (quoting 20 C.F.R. § 416.945(b)–(c)). The ALJ "must consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [the claimant's] ability to work" in determining a claimant's RFC. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th Cir. 2016)). "An ALJ's RFC assessment must include an evaluation of the claimant's ability to perform the physical functions listed in 20 C.F.R. § 404.1545(b), including sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions . . . [that] may reduce [a claimant's] ability to do past work and other work." *Rodney M.*, 2024 WL 1097192, at *3 (internal citation omitted). As previously explained by the Fourth Circuit, "every conclusion reached by an ALJ when evaluating a claimant's RFC must be accompanied by 'a narrative discussion describing [ ] the evidence' that supports it." *Dowling v. Comm'r of Soc. Sec. Admin.*, 986 F.3d 377, 387 (4th Cir. 2021) (quoting *Thomas*, 916 F.3d at 311). Thus, "A proper RFC analysis proceeds in the following order: (1) evidence, logical explanation, and conclusion." *Id.* at 388 (cleaned up). The Fourth Circuit has rejected "a per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," though, and has explained that "[r]emand may be appropriate . . . where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio*, 780 F.3d at 636; *see also Monroe*, 826 F.3d at 188. A "necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling, including a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Monroe*, 826 F.3d at 189 (citing *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *see also Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) ("In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion.") (internal quotation omitted) (emphasis in original).

> i. *The ALJ and Appeals Council Improperly Considered the Medical Evidence*

A claimant's RFC represents "the most [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). Plaintiff correctly points out that in determining a claimant's RFC, an ALJ must "consider all of the claimant's 'physical and mental impairments, severe and otherwise, and determine, on a function-by-function basis, how they affect [his] ability to work.'" *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019) (quoting *Monroe v. Colvin*, 826 F.3d 176, 188 (4th

4

Cir. 2016)).  An RFC analysis requires (1) evidence, (2) a logical explanation, and (3) a conclusion. *Id.* Plaintiff is entitled to a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts…and nonmedical evidence" *Id.* A "logical bridge" connecting the evidence and conclusion is "shorthand" for "the most minimal of articulation requirements. *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54 (7th Cir. 2024). Even when an ALJ does not assess exertional capabilities on an explicit function-by-function basis, there is no per se rule requiring remand when an ALJ does not perform such an analysis. *Mascio*, 780 F.3d at 636. Indeed, "the driving consideration is whether the ALJ's analysis allows for meaningful judicial review," *Lail v. Kijakazi*, No. 21-2133, 2022 WL 1711809, at *1 (4th Cir. May 27, 2022). "Thus . . . remand is appropriate only where 'inadequacies in the ALJ's analysis frustrate meaningful review,' such as when an ALJ fails to assess a claimant's capacity to perform relevant functions or does not resolve material disputes in the record." *Delesline-Meggett v. Comm'r of Soc. Sec.*, No. 21-1859, 2023 WL 8230802, at *1 (4th Cir. Nov. 28, 2023).

To begin, the Court notes that many of Plaintiff's arguments are long, and the Court has made its best effort to understand what exactly Plaintiff believes is error.  Local Rule 105.3 limits briefs to thirty pages.  Plaintiff, without filing a motion for leave to exceed the page limit, filed a forty-five page brief.  The Court has considered it in full for the sake of judicial economy.  The Commissioner's arguments are organized by step rather than the order in which Plaintiff raised them, and the Court has put considerable effort into aligning Plaintiff's arguments with the Commissioner's responses.

Of the many arguments before the Court, Plaintiff raises one argument the Court finds persuasive, though the Court is unsure if the precise argument Plaintiff raises is under Step 2 or Step 5.  In the arguments concerning a logical bridge, Plaintiff transitions to a seemingly Step 2 argument that the ALJ erred by failing to consider the

> debilitating symptoms from her [*sic*] seizures and headaches, particularly the unpredictability of when they will hit and how long they will last which has a direct correlation to the ability, or inability, to consistently attend a full-time job and stay productive and on task. Because the ALJ disregarded his complaints due to the lack of this immaterial evidence, the ALJ failed to make specific findings regarding the frequency, duration and severity of Mr. Ward's digestive and pain impairments, and instead simply drew a blank and unsupported conclusion that the claimant's impairments would be accommodated at the light exertion level (a finding that in and of itself is inherently contradictory as will be discussed further infra) but with the additional limitation to work with simple instructions and purported ability to concentrate for periods of two hours on work related tasks, which clearly on its face failed to build a logical bridge between the evidence and this conclusion (as will also be discussed in more detail infra).

(ECF No. 16 at 18).  The Court does not understand the purported connection between addressing headaches and the connection that would have to addressing a digestive or bathroom limitation. Further, the Court does not understand the repeated references to fibromyalgia, seizures, and migraines.  The medical records repeatedly show, "No headaches or seizures." Tr. 393, 421, 434, 452, 482, 496, 509, 623.  "Fibromyalgia" does not appear once in the record. From what the Court

can discern, Plaintiff does not contend these are impairments he had.  However, Plaintiff continues by arguing that the ALJ has failed to properly characterize his end-stage renal disorder as a severe impairment at Step 2.

As an initial matter, the Court will not automatically apply the standards for considering fibromyalgia to this case because fibromyalgia is uniquely characterized by solely subjective symptoms.  Here, issues like renal disease are not solely measurable by subjective symptoms.  For example, Plaintiff had a renal biopsy and had objectively measurable symptoms associated with the end-stage renal disease. For that reason, the Court is unpersuaded by much of Plaintiff's case law, which transports discussion specifically tailored to the needs of fibromyalgia claimants to the scenario here. The Court does, however, observe many references in the medical records to Plaintiff's end-stage renal disease, and it is well-taken that there has been no discussion of it in the ALJ's Step 2 or Step 5 analysis.  It does not appear that the Commissioner has addressed this argument.  There is no reference to Plaintiff's renal disease in the ALJ's decision.  Plaintiff does not clearly connect the fibromyalgia arguments to Plaintiff's renal disease, but continues to reiterate that "the ALJ's RFC failed to sufficiently or adequately address the nature and extent of the claimant's digestive and renal disorders."  (ECF No. 16 at 23).  The Court will consider that argument.[2]

An impairment is considered "severe" if it significantly limits the claimant's ability to work. See 20 C.F.R. § 404.1521(a). The claimant bears the burden of proving that his impairment is severe.  *See Johnson v. Astrue*, No. PWG–10–3139, 2012 WL 203397, at *2 (D.Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir.1995)).  However, "[i]f the ALJ proceeds to discuss and consider the non-severe impairment at subsequent steps, there is no prejudice to the claimant." *Rivera v. Astrue*, Civ. A. No. CBD-12-1095, 2013 WL 4507081, at *7 (D. Md. Aug. 22, 2013); *see also Thomas v. Comm'r. Soc. Sec. Admin.*, Civ. No. SAG-11-3587, 2013 WL 210626, at *2 (D. Md. Jan. 17, 2013) (finding harmless error when the ALJ completed each step in the sequential process and considered both severe and non-severe impairments); *Spitzbarth v.*

---

[2] Plaintiff vaguely states,

> [T]he Fourth Circuit and several others have unequivocally stated this requirement when a severe impairment involving restroom limitations is present. For example, in the case of *Megan I. B. v. Comm'r of Soc. Sec.*, Civil Action 2:22-cv-2238 (S.D. Ohio Nov. 15, 2022), this exact same restroom limitation was determined to be legally insufficient, with the Court specifically stating that when a restroom limitation is incorporated into an RFC, an ALJ must also make a specific finding about the frequency and duration of a claimant's bathroom usage as part of that RFC. *See also e.g., McQuade v. Comm'r of Soc. Sec.*, No. 1:21-cv-834, 2022 WL 4375984, at * 3-4, (N.D. Ohio Sept. 22, 2022) (holding that an ALJ errs when failing to make findings about the frequency and duration of a claimant's bathroom use when he or she finds that the claimant has a limit related to the need for bathroom breaks and access); *Green v. Astrue*, No. 3:09-cv-331, 2010 WL 2901765, at *6 (E.D. Tenn. July 2, 2010)…

(ECF No. 16 at 23).  First, the Court notes that the above-cases are not Fourth Circuit cases.  Although Plaintiff does cite two cases from North Carolina, the Court notes that Ohio and Tennessee are not Fourth Circuit states.  Second, the Court is unsure what Plaintiff means by "the Fourth Circuit and several others have unequivocally stated this requirement when a severe impairment involving restroom limitations is present," because there is no severe impairment involving a restroom limitation in this case.  The Court similarly struggles to understand the comparison to the stated cases Plaintiff argues show that "this exact same restroom limitation was determined to be legally insufficient," because there is no restroom limitation in the RFC.

*Comm'r, Soc. Sec. Admin.*, Civ. A. No. ADC-17-2934, 2018 WL 4705784, at \*10 (D. Md. Sept. 28, 2018) (holding an ALJ's failure to conclude that a plaintiff's low IQ score was a severe impairment, the error was harmless because the ALJ considered the low IQ at steps three and four of her analysis).

Here, the Court is satisfied that an error would be harmful because there is neither discussion of this issue at Step 2 or Step 5. Plaintiff is correct that the ALJ "failed to evaluate and state the frequency and duration of the claimant's bathroom visits in the RFC," and cites to extensive documentation in support of a bathroom impairment due to end-stage renal disease. (ECF No. 16 at 26); *see also* (Tr. 627-636, 675-78, 687-692, 705-710, 712-16, 828-832, 840-41, 875-890, 900-08, 944-951). Plaintiff relies on the evidentiary conflicts showing end-stage renal disease and associated symptoms. *Lewis*, 858 F.3d at 869 (cautioning that an ALJ may not "cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding"). Moreover, it is true that "the Court 'may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself.'" *Carroll v. Colvin*, Civil No. TMD 14–921, 2015 WL 5008738, at \*7 (D. Md. Aug. 20, 2015) (quoting *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007)). The Court is satisfied that at the very least, the record has been cherrypicked impermissibly so as to omit reference to Plaintiff's renal failure and renal challenges. Seeing that Plaintiff has been limited to only two hours of off-task time, the Court can find no explanation in the ALJ's opinion of how this limitation addresses Plaintiff's bathroom needs and end-stage renal disease. The Court does not express an opinion of whether the ALJ ultimately reached the proper decision, but the Court finds that at the very least, the ALJ cannot properly omit the extensive discussion of Plaintiff's renal impairments or fail to discuss how two hours of off-task time addresses these issues. To that end, the Court agrees that the ALJ failed to include a sufficient discussion to at least "glean the ALJ's reasoning." *See James T. v. Kijakazi*, No. CV AAQ-22-0574, 2023 WL 1997471, at \*4 (D. Md. Feb. 13, 2023).

Therefore, I will remand the case for further proceedings and direct the ALJ to incorporate a discussion of Plaintiff's renal disease and associated symptoms.

## V.     Conclusion

In sum, the Court agrees with Platiniff that the ALJ and subsequently the Appeals Council inadequately explained Plaintiff's RFC determination and underlying reasoning. In other words, the ALJ's and Appeals Council's RFC determination for Plaintiff is not supported by substantial evidence for the reasons explained above. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is REVERSED and REMANDED. The Clerk of the Court is accordingly asked to CLOSE this case.

Despite the informal nature of this letter, it is an Order and Opinion of the Court, and the Clerk is directed to docket it as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge